# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERRY L. WHITE, | ) 1:09cv01794 DLB <br> ) <br> ) <br> ) ORDER REGARDING PLAINTIFF'S <br> ) SOCIAL SECURITY COMPLAINT <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| Plaintiff, | |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## BACKGROUND

Plaintiff Perry L. White ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed his applications on February 17, 2006, alleging disability since March 14, 2004, due to shoulder pain and low back pain. AR 129-141, 153-160. After his applications

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

were denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 82-83, 91-91, 110-111. ALJ Bert C. Hoffman, Jr., held a hearing on November 24, 2008, and issued an order denying benefits on March 27, 2009. AR 16-23, 24-82. On June 26, 2009, the Appeals Council denied review. AR 6-8.

Hearing Testimony

ALJ Hoffman held a hearing in Fresno, California, on November 24, 2008. Plaintiff attended the hearing with his attorney, Melissa Proudian. AR 24.

Plaintiff testified that he was 34 years old that the time of the hearing. He was 6 feet, 2 inches tall and weighed 365 pounds. AR 27. He lives with his wife and their three children. Plaintiff also has two children that live with their mother, though he sees them almost everyday. AR 28-29.

Plaintiff has a driver's license and drives about three or four times per week to doctor's appointments and church. His driving is limited because he only drives short distances. AR 31.

Plaintiff completed the tenth grade and has not had vocational training. AR 32. He is an assistant pastor and went to Bible classes to get a degree. AR 33.

Plaintiff last worked in 2005 or 2006 as a forklift driver, but he stopped after about three months because he injured his back. AR 33-34. Plaintiff explained that he first injured his back in 2000 and then again in 2003. AR 35. Plaintiff also worked part-time for one month at Costco in 2000. AR 36. He had a worker's compensation case that settled in 2006. AR 43.

Plaintiff testified that he could not work because of back pain, high blood pressure, numbness on his left side and pain in his left shoulder. AR 38-39. He also has problems with his left knee. AR 38. He explained that his back pain is located in the lower part of his back and is worse on the left side. His daily pain rates anywhere from a five to an eight, out of ten. His pain is aggravated by cold air, bending, walking, trying to lift something, reaching with his left hand and turning in an awkward way. AR 39. Plaintiff thought that he could walk for maybe a quarter of a mile before needing to stop. He also uses a cane, prescribed by Dr. Butler in 2004 or 2005, about three times per week. AR 40-42, 47.

1     Plaintiff thought that he could sit for about 30 minutes, possibly 40 minutes if he isn't in
2 too much pain. AR 48-49. He could stand for about 30 minutes without a cane. He didn't know
3 how much he could lift because when he lifted his son, who weighs about 22 to 25 pounds, he
4 aggravated his back "real bad." He later stated that he could lift 15 pounds. AR 49.

5     Plaintiff sees chiropractor Dr. Butler for his back and it helps a lot, though it doesn't take
6 away the pain completely. Plaintiff also takes six or seven medications for his pain. The
7 medication takes away the pain because it puts him to sleep, but the pain is still there when he
8 wakes up. AR 52-53.

9     Plaintiff explained that his day is spent mainly taking medication, trying to reduce the
10 pain in his back and sleeping. AR 56-57. He helps with cooking or cleaning "every blue moon."
11 If his back doesn't hurt too much, he tries to help out a little, but his wife does a majority of the
12 cooking. He thought he cooked about once a month and didn't do any cleaning. AR 58.
13 Plaintiff can get himself dressed but has his children or his wife help with his shoes. He can also
14 take showers. AR 58-59.

15     When questioned by his attorney, Plaintiff explained that the pain in his lower back
16 shoots down to his left hip and all the way down to his toes. It also goes up into his left shoulder.
17 AR 62.

18     Plaintiff had surgery in his left shoulder in 2005. He has regained some movement but
19 has pain on a weekly basis. He rated the pain at a five or six. AR 63.

20     Plaintiff also has pain in his left knee about twice a week, for about 30 minutes to an hour
21 each time. AR 65. It affects his ability to stand, walk and climb stairs. AR 66.

22     Plaintiff testified that his pain affects his ability to focus and concentrate. He thought he
23 could focus his attention for about an hour or two before needing to take medication and go into
24 a room by himself and pray for the pain to stop. AR 66-67.

25     Plaintiff preaches on Sundays and teaches on Tuesday and Friday nights. AR 69. He
26 prepares for his sermon throughout the week and tries to prepare for an hour to an hour and a half
27 each day, 10 to 30 minutes at a time. AR 70. He also spends about an hour preparing for his
28 Tuesday night class and about an hour preparing for his Friday night class. AR 70. He has been

the sole pastor at his church for about two years.  AR 77.  Plaintiff drove to Arkansas in September with his wife and two missionaries, to see another pastor.  AR 78.

Medical Evidence

Plaintiff began treating with Tomas B. Rios, M.D., on April 6, 2004.  On examination, Plaintiff appeared to be in mild distress as his movements were perceptibly guarded.  Dr. Rios diagnosed thoracic spine sprain/strain, lumbar spine sprain/strain, left shoulder sprain/strain, left leg parathesia and cervical radiculitis.  Dr. Rios believed that Plaintiff should continue his conservative course of care and recommended manipulation under anesthesia of the lumbar and thoracic spine.  Dr. Rios refilled Plaintiff's medications.  AR 276-279.

On August 30, 2004, Plaintiff saw Donald Pang, M.D., for an Agreed Medical Examination.  Plaintiff had a limited range of motion in his left shoulder and his back flexion was 50 percent of normal.  He had tenderness over the left shoulder and muscle testing was normal in both shoulders.  Impingement test was positive in the left shoulder.  Dr. Pang noted that Plaintiff's hypersensitivity credibility test was inappropriate as to his shoulders.  Dr. Pang opined that Plaintiff's back was permanent and stationary but that his left shoulder was not.  He diagnosed rule out left shoulder impingement and lumbar spine strain.  Plaintiff was precluded from very heavy work.  AR 223-230.

A November 2004 MRI of Plaintiff's left shoulder showed no evidence of a rotator cuff tear and mild tendinosis involving the anterior leading edge of the supraspinatus tendon.  AR 214.

On December 8, 2004, Dr. Pang completed a Supplemental Report.  Dr. Pang opined that Plaintiff could not perform repetitive work at shoulder level or any very heavy lifting involving the left shoulder.  AR 215-216.

On March 22, 2005, Dr. Rios described Plaintiff as falling under the category of "delayed recovery syndrome."  He also indicated that Plaintiff was experiencing chronic pain syndrome and a "more judicious approach to the management needs to be maintained."  AR 240.

On April 28, 2005, Dr. Rios indicated that he agreed with the conservative course of Plaintiff's treatment.  AR 235.

    Plaintiff saw David E. Taylor, M.D., on July 8, 2005. He complained of left shoulder pain after injuring his shoulder while working in November 2003. Examination and x-rays revealed subacromial impingement syndrome, left shoulder and degenerative osteoarthritis, left acromioclavicular joint. AR 323-324.

    On September 14, 2005, Dr. Taylor performed arthroscopic surgery on Plaintiff's left shoulder. AR 317.

    Plaintiff returned to Dr. Taylor on December 12, 2005, and reported that his range of motion and strength have improved significantly, though he had some pain in the anterior aspect of the left shoulder. All ranges of motion were within normal limits and strength was 5/5. There was no tenderness, effusion, edema or crepitus. AR 314.

    On January 12, 2006, Dr. Taylor examined Plaintiff and opined that he could return to work as of February 1, 2006, with no restrictions. AR 313.

    On March 3, 2006, Plaintiff returned to Dr. Taylor and reported that he awoke on February 24, 2006, with pain in his arm and has since been very cautious about using his shoulder. Examination of the shoulder showed no signs of trauma. Strength was grossly 2/5. The shoulder exhibited diffuse tenderness to the lateral deltoid, but "this was inconsistent." There was no effusion, edema or crepitus. X-rays of the shoulder showed good subacromial space with postsurgical changes. Dr. Taylor diagnosed status post left shoulder subacromial decompression and recommended that Plaintiff continue his physical therapy. AR 311-312.

    On May 26, 2006, Plaintiff saw Benjamin Chong, M.D., for a consultive examination. Plaintiff complained of chronic back and left shoulder pain since a work-related injury in 2005. Plaintiff described sharp, throbbing and aching pain and denied radiation or parathesias. On examination, Plaintiff could stand on his toes and heels without difficulty. Range of motion in his lumbar spine was limited and there was mild tenderness to percussion. Straight leg raising was to 80 degrees bilaterally without pain. Range of motion of the left shoulder was limited and he had a mildly positive impingement test. Pulses, grip strength, sensation and reflexes were normal. Dr. Chong diagnosed chronic left shoulder pain, status post arthroscopic surgery, and mechanical low back pain. He opined that Plaintiff could not perform frequent bending or heavy

5

lifting.  He could lift and carry 20 pounds occasionally, 10 pounds frequently, stand and walk for six hours and sit without restriction.  Plaintiff could occasionally push, pull and perform overhead activities with the left shoulder.  AR 331-335.

On June 16, 2006, State Agency physician D.D. Sharbaugh, M.D., completed a Physical Residual Functional Capacity Assessment form.  He opined that Plaintiff could lift and carry 20 pounds occasionally, 10 pounds frequently, stand and/or walk for about six hours and sit for about six hours.  He was unlimited in pushing and pulling and could occasionally stoop, crouch and perform left overhead reaching.  AR 336-341.  This finding was affirmed on July 25, 2007.  AR 344-345.

On July 17, 2006, Plaintiff returned to Dr. Taylor and reported occasional pain.  He had full flexion, abduction and internal and external rotation of the left shoulder and 5/5 strength.  Sensation, motor function and circulation were normal.  Dr. Taylor believed that Plaintiff was permanent and stationary regarding the left shoulder as of April 13, 2006.  AR 342.

Plaintiff saw R. Timothy Butler, D.C., on April 19, 2007.  He reported having increased difficulty taking care of his family, doing household chores and attending to his young baby.  Plaintiff complained of pain in the lumbar paravertebral muscles and his left knee.  He had lost 25 percent of his left shoulder range of motion.  Dr. Butler noted that Plaintiff did his best to self-manage his pain but that his activities of daily living decrease without physical medicine treatment.  After such treatment, he is able to perform more family duties and function at a higher level.  AR 448-449.

In September 2007, Plaintiff returned to Dr. Butler after he hurt his back lifting his four year old daughter up to the kitchen sink.  Dr. Butler noted that Plaintiff did "relatively well" with minimal amounts of physical medicine treatment.  AR 425-426.

Plaintiff saw Dr. Butler on October 25, 2007, and reported that he did pretty well after the last physical medicine treatment and was able to help his wife wash dishes.  He was doing well until he had to reach out to his small daughter.  Plaintiff's flares usually involved one of his children at home.  He also reported that he tries to help his wife as much as possible around the house, but he cannot sustain flexion in his back.  AR 421-422.

In April 2008, Plaintiff reported that helping his young child into a high-chair caused a strain injury to his back. AR 408. He also reported that when he reaches out to grab one of his small children with his left hand, he has excruciating shoulder pain. AR 412.

In May 2008, Dr. Butler noted that Plaintiff did quite well after his last physical medicine treatment. He was able to help his wife with housework and attend to his children. AR 403.

In June 2008, Plaintiff reported that he was still unable to lift his children. He reported a flare in his back pain when he was helping his wife do dishes. AR 398

In July 2008, Plaintiff told Dr. Butler that he aggravated his back when he reached out for one of his children a few nights earlier. Dr. Butler indicated that Plaintiff did well with minimal amounts of physical medicine treatment, though when he runs out of medication, he has quite a few bad days. AR 393-395.

Plaintiff returned to Dr. Butler on September 9, 2008, and reported that he was having a "bad time" with his left shoulder. He was having difficulty "lifting or stretching out the left arm and especially when he has to do so against resistance when he is attending one of his children." Plaintiff was helping his wife by doing some housework and twisting his torso brought on sharp back pain. On examination, Plaintiff had myospasm with palpation in the lumber paravertebral muscles and painful extension consistent with spinal stenosis and lumbar facet hypertrophy. He also had ongoing point tenderness over the anterior aspect of the left shoulder and trap area. Dr. Butler modified Plaintiff's exercise program and suggested additional physical medicine treatments for Plaintiff's delayed recovery syndrome and chronic pain syndrome. AR 384-387.

On November 26, 2008, Plaintiff saw Edward J. O'Neill, M.D., for an Agreed Medical Examination. He described Plaintiff as morbidly obese and in no distress. His examination was essentially normal. Subjectively, Plaintiff complained of back pain, left-sided numbness and left upper extremity numbness. Dr. O'Neill diagnosed orthopedic conditions involving the left shoulder and back (noting that he would defer to an appropriate specialist on these conditions), morbid obesity, hypertension and a sleep disorder. Plaintiff had no periods of temporary disability from an internal medicine standpoint. AR 464. He was permanent and stationary but was not a qualified injured worker. AR 471.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of status-post left shoulder arthroscopic surgery, mechanical lower back pain and obesity. AR 18. Despite these impairments, Plaintiff retained the residual functional capacity ("RFC") to lift and carry 20 pounds occasionally, 10 pounds frequently, stand and/or walk six hours, sit six hours and occasionally perform overhead reaching with his left shoulder. AR 19. The ALJ concluded that Plaintiff could perform a significant number of jobs in the national economy. AR 22.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. See *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of

such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. <u>Quang Van Han v. Bowen</u>, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. <u>Terry v. Sullivan</u>, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. <u>20 C.F.R. §§ 404.1520</u> (a)-(f), 416.920 (a)-(f) (1994). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" (status post-left shoulder arthroscopic surgery, mechanical lower back pain and obesity) based on the requirements in the <u>Regulations (20 CFR §§ 416.920(b)</u>); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform his past relevant work; but (5) retains the RFC to perform a significant number of jobs in the national economy. AR 18-22.

In this appeal, Plaintiff contends that the ALJ improperly discounted his testimony.

## DISCUSSION

Plaintiff argues that the ALJ failed to articulate clear and convincing reasons for rejecting his testimony.

In <u>Orn v. Astrue</u>, 495 F.3d 625, 635 (9th Cir. 2007), the Ninth Circuit summarized the pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's subjective complaints:

> An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. <u>See Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir.1989). However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "'specific, cogent reasons for the disbelief.'" <u>Morgan</u>, 169 F.3d at 599 (quoting <u>Lester</u>, 81 F.3d at 834). The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." <u>Id.</u> Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing." <u>Id.</u>
>
> Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony. . . An ALJ's decision to reject a claimant's testimony cannot be

supported by reasons that do not comport with the agency's rules. *See* 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, ... and are to be relied upon as precedents in adjudicating cases."); *see Daniels v. Apfel,* 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at step three of the disability determination was contrary to agency regulations and rulings and therefore warranted remand). Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Fair*, 885 F.2d at 603; *see also Thomas*, 278 F.3d at 958-59.

The ALJ begins his credibility analysis with a finding that Plaintiff contradicted his own testimony. AR 20. The ALJ first explains that Plaintiff "testified that he can not concentrate for more than an hour, but yet he spends more than an hour preparing for his church duties several days a week." AR 20. As Plaintiff argues, the ALJ misstates Plaintiff's testimony. Plaintiff testified that he could concentrate for an "hour or two" and that he spends an hour to an hour and a half each day, 10 or 30 minutes at a time, preparing for his church duties. AR 66, 70. Defendant concedes that the ALJ misstated the testimony and contends that it is harmless error. The Court agrees that this error is harmless because, as discussed below, the remaining reasons for questioning Plaintiff's credibility are valid. *Batson v. Barnhart*, 359 F. 3d 1190, 1197 (9th Cir. 2004) (upholding ALJ's credibility determination even though one reason may have been in error).

The ALJ next points to inconsistencies in Plaintiff's description of his participation in household chores and childcare. "He also claims that he does not take care of his children and will not do housework, but the medical record reports several occasions that the claimant reported doing both of these things." AR 20. In support, the ALJ cites treatment notes from Dr. Butler where Plaintiff described attending to his children and helping with housework. AR 384, 385, 403 408. In contending that the ALJ misstated his testimony, he points to his statements that he helps with cooking and cleaning "every blue moon" and if his back doesn't hurt too much, he tries to help out a little. AR 58. However, when later asked by his attorney if he helps out with cleaning, he stated, "No." AR 58. The ALJ correctly noted this inconsistency. *Thomas v. Barnhart*, 278 F.3d 958-959 (9th Cir. 2002) (ALJ may consider inconsistencies in claimant's statements as one factor in credibility analysis).

10

1   As to his children, Plaintiff did not specifically testify to the level of care he provides for
2   his children.  While Plaintiff testified that he lives with his three children and sees his other two
3   children almost everyday, he explained that he can't teach his children sports, has not taken them
4   to the fair in four years and "can't do stuff" with his kids.  AR 28-29, 59-60.  He also stated that
5   he was never alone with his children and that a babysitter watches the children when he's at
6   home during the day.  AR 75-76.  From this, the ALJ could reasonably conclude that Plaintiff
7   testified that he did not take care of his children.
8   Insofar as the ALJ cites Plaintiff's reports to Dr. Butler, the records show that despite
9   some difficulty, Plaintiff often performed household chores and cared for his children.  AR 422,
10  444, 448-449.  In fact, Dr. Butler's most recent treatment notes from September 2008 indicated
11  that Plaintiff was having difficulty lifting or stretching his left arm when he was attending one of
12  his children.  The notes also indicate that Plaintiff experienced sharp back pain when he was
13  helping his wife by doing some housework.  AR 384-387.  In other words, although Plaintiff
14  contends that the evidence is consistent with his testimony, the evidence shows that at least from
15  April 2007 right up until two months before the hearing, Plaintiff continued to help with
16  housework and "attend" to his children even though he complained that such activities hurt his
17  back and shoulder.  AR 384-387, 393-395, 398, 403, 408, 412, 421-422, 425-426, 448-449.
18  Where the evidence is susceptible to more than one rational interpretation, the Court must uphold
19  the ALJ's decision.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).
20  The ALJ also cites Plaintiff's lifting of his child as inconsistent with his claim that he
21  cannot lift 20-22 pounds, which was the weight of his son.  AR 20.  Again, although the medical
22  records cite Plaintiff's description of difficulty with lifting and reaching for his children, he
23  continued to perform these activities.  AR 384, 395, 408, 425.
24  Finally, the ALJ noted that Plaintiff testified that he limits his driving and does not drive
25  long distances, yet he drove to and from Arkansas in September 2008, just two months before the
26  hearing.  AR 78.  Plaintiff faults the ALJ for not gathering additional facts, such as whether or
27  not Plaintiff drove and in what type of vehicle he traveled.  When asked how they got to
28  Arkansas, Plaintiff stated, "We had to drive down there, sir."  AR 77.  He did not elaborate or

suggest that his trip, whether he was the driver or a passenger, allowed for anything other than sitting for long stretches of time. It was not incumbent upon the ALJ to gather additional facts when Plaintiff unequivocally stated that he drove to Arkansas.

Defendant also points to the ALJ's citation of the objective medical evidence in support of his credibility determination. For example, the ALJ explained that Plaintiff reported significant improvement after his treatments and did well with minimal amounts of treatments. AR 20. Plaintiff was released to work with no restrictions in February 2006, but returned in March 2006 with a partially inconsistent examination. AR 20. An Agreed Medical Examiner also noted that Plaintiff's hypersensitivity credibility test was inappropriate. AR 20. Finally, the ALJ explained that two days after the hearing, on November 26, 2008, Dr. O'Neill examined Plaintiff and did not set forth any limitations. AR 20. So long as the medical evidence is not the only reason given for rejecting a claimant's testimony, the ALJ may properly cite to the objective medical evidence. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). Plaintiff does not contest the ALJ's treatment of the medical evidence.

Plaintiff opposes Defendant's citation to the objective evidence and suggests that it is a post hoc rationalization because the ALJ made it "clear" why he rejected Plaintiff's testimony. Reply Brief, at 7. Plaintiff believes that the ALJ only cited the objective evidence in his discussion of the physicians' opinion. His argument is undermined, however, by the ALJ's statement that "Much of the claimant's testimony is contradicted not only by the *medical record*, but also the claimant's own testimony." AR 20.

The ALJ's credibility analysis was sufficiently specific to allow the Court to conclude that the ALJ did not arbitrarily reject Plaintiff's testimony. <u>Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002)</u>.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Perry L. White.


IT IS SO ORDERED.

Dated:   **September 1, 2010**                                **/s/ Dennis L. Beck**
                                                           UNITED STATES MAGISTRATE JUDGE